RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 4/16/08
GB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

| LAURA GUILLOT | CIVIL ACTION NO. 07-430 |
|---|---|
| VERSUS | JUDGE RICHARD T. HAIK |
| WALGREEN LOUISIANA, INC. | MAGISTRATE JUDGE METHVIN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REASONS FOR JUDGMENT

On March 5, 2008, Walgreen Louisiana Co., Inc. ("Walgreens") filed a Motion for Summary Judgment.

**A.  Facts**

Laura Guillot ("Guillot") was hired as a fulltime Floater Pharmacist on August 13, 2004. On the morning of March 9, 2006, Guillot, at her request, met with her supervisor, Paula Belle ("Belle") and District Manager Lee Jones ("Jones") at the Walgreens' District Office. Guillot raised several topics during the meeting, including her benefits, schedule, previous disciplinary actions, accusations regarding Belle, and requests for mileage and/or travel pay. In particular, all three discussed an inappropriate comment that Guillot had made to another Walgreens employee about a year before this meeting. Toward the end of the meeting, Guillot began a discussion regarding sewer problems at the Breaux Bridge store.

Soon after the meeting, Guillot contacted two other Walgreens employees, Brian Smith ("Smith") and Barbara Patin ("Barbara"). The subject of Guillot's call was to discuss a previous incident in which Guillot made an inappropriate comment to Smith. Guillot asked both if either

of them complained to Ms. Belle about Guillot's inappropriate comment. Guillot then suggested to the two individuals that they should deny ever having had this conversation with her.

Supervisor Belle found out that Guillot made phone calls to Smith and Patin and reported the calls to Walgreens Loss Prevention Supervisor, Jonathan Collier ("Collier") for investigation. Collier took that statements of Smith and Patin. Both stated that they were told by Guillot not to tell anyone about their conversation. Collier also took Guillot's written statement. In her statement, Guillot admits that she asked Smith and Patin not to tell anyone that she had contacted them.

Based upon Smith and Patin's reports and Guillot's admissions in her statement, Paula Belle contacted Chris Murray ("Murray") with Walgreens' Employee Relations to determine what, if any, disciplinary action should be taken. After reviewing the statements, Murray informed Belle that he would support either a final written warning or termination of Guillot. Paula Belle and Lee Jones then decided that termination was in order. They terminated Guillot on the same day for violation of company policy/dishonesty.

As a result, Guillot filed suit against Walgreens on March 8, 2007, alleging: (1) whistleblower retaliation in violation of the Louisiana Environmental Whistleblower Statute, *Louisiana Revised Statute 30:2027;* (2) violation of the Fair Standard Labor Act, *29 United States Code 201, et seq.* and/or the Louisiana Wage Payment Statute, *Louisiana Revised Statute 23: 631, et seq.*, by failing to pay her and/or witholding pay. Specifically, Guillot alleges that Walgreens owes her: (a) reimbursement of her mileage expense (approximately $192.22); (b) payment of her year-end bonus for 2005 (approximately $175.00); and (c) a pharmacist referral bonus ($2,000).

## B. Plaintiff's Contentions

Plaintiff argues that she can maintain a cause of action under the Louisiana Environmental Whistleblower Statute, <u>La. R.S. 30:2027</u>, by establishing a prima facie case of retaliation. Plaintiff alleges that she engaged in a protected activity by complaining to her supervisors at a meeting on March 9, 2006 and reporting to the state Board of Pharmacy in December of 2005 the hazardous conditions in which she was required to work.

Plaintiff alleges that the term "disclose" as used in <u>Louisiana Revised Statute 30:2027(1)</u> is not interpreted as restrictively as the Defendant would have this Court believe. In it's Memorandum in Support of Summary Judgment, Defendant states that the Plaintiff did not "threaten to disclose" a violation of law at her March 9, 2006, meeting with Paula Belle and Lee Jones as required by the statute. In analyzing the amended <u>La. R.S. 30:2027</u>, <u>Stehl v. Slam Resources</u>, *1997 La. App. LEXIS 1761, p. 8 (La. Ct. App. 1997)*, states: "...the legislature did not intend to preclude an action by an employee for retaliatory discharge when the employee reports ***or complains*** or otherwise "discloses" the violation of an environmental law, rule or regulation...." During the March 9, 2006, meeting, Plaintiff alleges that she ***complained*** to Paula Belle and Lee Jones about the hazardous work conditions she was subjected to. By "complaining" to Ms. Belle and Mr. Jones about such hazardous condition, Plaintiff contends that she engaged in a protected activity.

Plaintiff also contends that a causal connection exists between the protected activity in which she engaged and the adverse action. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." <u>Swanson v. GSA</u>, *110 F.3d 1180, 1188 (5th Cir. 1997)*,

*citing Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993). In this case, Plaintiff complained to the Board of Pharmacy in December, 2005, about 3 months before her termination on March 14, 2006. Moreover, her complaints to her supervisors, Paula Belle and Lee Jones, came on March 9, 2006, five calendar days prior to the termination. In fact, Paula Belle recommended Plaintiff for termination only a few hours after plaintiff's complaints. Therefore, Plaintiff contends that the close timing between her protected activity (i.e., the meeting) and the adverse action against her (i.e., being terminated by Walgreens) makes out a prima facie case of retaliation.

Once a plaintiff shows a prima facie case of retaliation, the defendant must then articulate a legitimate, non-discriminatory reason for its action, and plaintiff must then provide evidence that the alleged legitimate reason is nothing but pretext for retaliation. *Swanson, supra, at 1188*. In its Memorandum in Support, Defendant lists a series of reasons for terminating Plaintiff, such as previous warnings and poor work performance. However, Plaintiff contends that the evidence shows that none of these elements played a role in her termination.

Plaintiff further argues that there is a genuine issue of material fact as to whether she is entitled to reimbursement for mileage. Plaintiff alleges that Defendant attempts to escape liability solely due to her failure to re-submit the information after the March 9, 2006 meeting. However, the Plaintiff argues that the Defendant conveniently omits the fact that Ms. Guilliot was terminated only a few days later, precluding an opportunity for such re-submission.

Plaintiff maintains that she is entitled to a year-end bonus for 2005. Walgreen's policy states, "...If a pharmacist is assigned to a store for less than the full bonus period, or in certain locations has not worked a minimum of 30 hours in each week of the bonus period, the Results

Department will prorate the bonus." Therefore, Plaintiff contends that, according to policy, she worked part time for "less than the full bonus period." Thus, Plaintiff insists that she is entitled to a prorated bonus for the year 2005.

Finally, Plaintiff contends that she is entitled to a pharmacist referral bonus. Upon becoming employed by Walgreens, John Guillot, plaintiff's brother, sent an e-mail to Paula Belle informing her that he had been referred for employment by plaintiff and that she should be considered for the referral bonus. Therefore, Plaintiff argues that there is a genuine issue of fact as to whether Ms. Belle needed to offer anything further to inform the program administrator that she had made a referral.

### C.     Defendant's Contentions

Defendant contends that Plaintiff's whistleblower claim is based upon on a sewer back up (overflowing toilets) at the Walgreens store in Breaux Bridge. (Def. Exhibit B, pp. 135,137). To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in activity protected by statute; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected activity in which she engaged and the adverse action. *See Imbornone v. Treasure Chest Casino*, 2006 WL 1235979, *3 (E.D. La. May 3, 2006); *Smith v. AT&T Solutions, Inc.*, 90 Fed Appx. 718, 723 (5th Cir. 1994). Defendant alleges that Plaintiff cannot establish a prima facie case of whistleblower retaliation because Plaintiff cannot prove that she engaged in a "protected activity".

Plaintiff testified that the "protected activity" she engaged in under *Louisiana Revised Statute 30:2027* was disclosing and/or threatening to disclose a violation of Louisiana law during her March 9, 2006 meeting with Paula Belle and Lee Jones. (Def. Exhibit B, pp. 145-

146). Plaintiff tape recorded that meeting. However, the Defendant contends that the tape recording reveals that Plaintiff did not threaten to disclose a violation of Louisiana law or otherwise engage in any protected activity during the meeting. (Def. Exhibit B, p. 78; Def. Exhibit T, pp. 38-46). The Defendant alleges that the Plaintiff's real purpose for the meeting was to confront Paula Belle about a rumor that she had heard from two other employees that Belle had been obtaining statements to terminate Plaintiff. (Def. Exhibit B, p. 74). It was only toward the end of the meeting that Plaintiff asked Jones and Belle "out of curiosity" whether they had notified the "proper authorities" with regard to the sewer back up. (Def. Exhibit T, p. 38).

The Defendant further contends that Plaintiff cannot establish a prima facie case of whistleblower retaliation because Plaintiff cannot show that there was a causal connection between her alleged "protected activity," her meeting with Jones and Belle on March 9, 2006, and her termination on March 16. Defendant insists that the Plaintiff's termination was not prompted by the March 9th meeting, but instead by her repeated unprofessional and inappropriate activities, for which she received repeated counseling. (Def. Exhibits D, E, H, J and P). Defendant further contends that Plaintiff's termination was precipitated by her actions after the March 9th meeting. Based upon Plaintiff's prior warnings, along with Plaintiff's actions after the March 9th meeting, Defendant urges that it had a legitimate, non-retaliatory reason for discharging Plaintiff.

Defendant contends that Plaintiff is not entitled to a mileage reimbursement in the amount of approximately $192.22. The transcript of the March 9th meeting reveals that Belle and Jones told Plaintiff that they had never received any requests for reimbursement from her and Plaintiff, therefore, agreed to furnish them with copies of the reimbursement request. (Def.

Exhibit T, pp. 37-38). However, Defendant insists that Plaintiff never provided Belle and Jones with copies of the requests. (Def. Exhibit B, p. 85). Consequently, Defendant asserts that there is no evidence, aside from Plaintiff's self-serving testimony, to establish that she ever sought reimbursement from Walgreens by completing the proper paperwork and submitting it for approval.

Defendant argues that Plaintiff is not entitled to a year-end bonus for 2005 in the amount of $175.00. Walgreens' policy states that staff pharmacists who work less than 30 hours per week are not eligible for a bonus. (Def. Exhibit HH, p. 2). Plaintiff worked below 30 hours a week (i.e., part - time) from August 2005 through December 2005. (Def. Exhibit B, pp. 123,156). Therefore, Defendant argues that Plaintiff is not eligible to receive a bonus for 2005.

Finally, the Plaintiff argues she is entitled to a pharmacist referral bonus since her brother and sister-in-law were both hired by Walgreens. Defendant contends that Plaintiff is not entitled to receive a pharmacist referral bonus because she did not make a request at the time that her brother and sister-in-law were hired. Defendant maintains that Plaintiff did not follow the instructions in the policy and did not complete and submit the written form for this bonus during her employment, resulting in non-payment. (Def. Exhibit GG).

**D.   Analysis**

The environmental whistleblower statute, *La. R.S. 30:2027*, provides that no employer shall act in a retaliatory manner against an employee, who acting in good faith:

> (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule or regulation.

> (2) Provides information to, or testifies before any public body conducting an investigation, hearing or inquiry into any environmental violation by the employer, or another employer with whom there is a business relationship, of an environmental law, rule or regulation.

Where there is no direct evidence of retaliation, the well-known *McDonnell Douglas* burden shifting framework applies to retaliation claims brought under Louisiana's whistleblower statutes. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Also See *Imbornone v. Treasure Chest Casino*, 2006 WL 1235979, *3 (E.D. La. May 3, 2006); *Smith v. AT&T Solutions, Inc.*, 90 Fed Appx. 718, 723 (5th Cir. 1994). To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in activity protected by statute; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected activity in which she engaged and the adverse action. *Smith v. AT&T Solutions, Inc.*, 90 Fed Appx. 718, 723 (5th Cir. 1994).

Plaintiff argues that she engaged in "protected activity" under the statute by "complaining" of a sewer problem during the March 9, 2006 meeting with Paula Belle and Lee Jones. However, after reading the transcript from the meeting, this Court finds that the Plaintiff did not engage in a "protected activity" under the Environmental Whistleblower Statute by "disclosing" or "threatening to disclose" an activity of the employer the employee "reasonably believes is in violation of an environmental law, rule or regulation." *La. R.S. 30:2027(A)(1)*.

The transcript of the meeting clearly shows that Plaintiff's purpose for calling the meeting was not to disclose or threaten to disclose a violation of law. Rather, Guillot's own words show that what "spurred" her to "request the meeting" was that she "had been told that Ms. Belle had...requested remarks" from her peers "that were derogatory in nature, so that she

(Ms. Belle) could use to basically terminate" Plaintiff's "employment with Walgreens..." (Def. Exhibit B, 74). In other words, Plaintiff's real purpose for the meeting was to confront Paula Belle about a rumor that she had heard from two other employees that Belle had been obtaining statements to terminate Plaintiff. (Def. Exhibit B, p. 74). It was not until the end of the meeting that Plaintiff started the discussion about the sewer issue by stating that it was "just out of curiosity." (Def. Exhibit T, p. 38).

Furthermore, at no time during this meeting did Guillot disclose or threaten to disclose a violation of an environmental law, rule or regulation. The transcript reveals that during the meeting, Guillot only asked whether Walgreens had notified the "proper authorities" of the "episode of the sewer backing up." (Def. Exhibit T, p. 38). Paula Belle responded by asking what "proper authorities" Guillot was referring to, and Guillot told her the Board of Pharmacy and OSHA. (Def. Exhibit T, p. 39). Simply put, as Belle informed Guillot at the time, there are no laws, regulations or rules that requires Walgreens to report a toilet overflow/sewer backup to either the Board of Pharmacy or OSHA. (Def. Exhibit T, p. 42). During the meeting Guillot did not identify a specific environmental law, rule or regulation that she reasonably believed Walgreens violated. (Def. Exhibit T). Indeed, Guillot testified that she knew of no laws requiring Walgreens to report the sewer back-up. (Def. Exhibit B, pp.147-148). In fact, there are no such legal requirements. (Def. Exhibits CC, DD). Therefore, Guillot could not have reasonably believed that Walgreens had violated an environmental law and, consequently, her actions could not be classified as a "protected activity."

Plaintiff also argues that a causal connection existed between the protected activity in which she engaged (i.e., the meeting on March 9th) and the adverse action (i.e., her termination

on March 16th) by relying on the close temporal proximity between the two events to establish a casual connection. However, the 5th Circuit has held temporal proximity alone is insufficient to prove a casual connection. See *Strong v. Univ. Healthcare Sys.*, L.L.C., 483 F.3d 802, 808 (5th Cir. 2007). Therefore, Plaintiff needs more than close timing to prove a causal connection, especially since Walgreens has offered a legitimate reason to explain both her termination and the timing of her termination.

In other words, Plaintiff had ongoing performance problems and had been counseled on numerous occasions regarding her inappropriate language, outbursts, and temper. (Def. Exhibits D,E,H, J and P). Indeed, Guillot had been placed on final written warning twice during her year and a half tenure at Walgreens: Guillot was placed on final written warning on May 16, 2005 and again on February 7, 2006, one month prior to her termination. (Def. Exhibits H, P). As of February 7, 2006, Guillot knew her job was in jeopardy and, if she received one more corrective action, she would be terminated. (Def. Exhibit B, p. 106).

Then, on March 9, 2006, after her meeting with Jones and Belle, Guillot chose to contact two Walgreens' employees, Barbara Patin and Brian Smith, to discuss an incident which had occurred over a year before, regarding her comments to Smith that he needed "ice in his crotch." (Def. Exhibits X, Y, and Z). Guillot quizzed these employees in order to find out which one of them had reported for making the comment. (Def. Exhibits V, X, Y, and Z). Guillot then instructed them not to tell anyone that she had called them. (Def. Exhibit B, pp. 100-102; Exhibits V, X, Y and Z).

Based upon her actions both before and after the March 9th meeting, this Court finds that the Defendant did have a legitimate, good faith reason for Plaintiff's discharge. The evidence

shows that Belle did not view Guillot's behavior on March 9th (i.e., the phone calls and instructions to lie) in isolation of the other prior incidents. (Def. Exhibit AA). For example, Belle states in her declaration made on March 4, 2008, that both she and Lee Jones "decided that in light of her (Guillot) previous disciplinary actions, including the final written warning given to her on February 7, 2006, termination was in order." (Def. Exhibit AA). Therefore, Defendant did have a legitimate, good faith reason for Plaintiff's discharge.

This Court finds that Plaintiff is not entitled reimbursement for mileage because there is no evidence that Plaintiff ever sought reimbursement from Walgreens by completing the proper paperwork and submitting it for approval. Indeed, Paula Belle and Lee Jones stated during the March 9th meeting that they had not received any written requests for reimbursements. (Def. Exhibit B, p. 85). Plaintiff also admits that she has no evidence that Jones or Belle ever received the mileage reimbursement forms. (Def. Exhibit B, p. 85). Belle has sworn to that fact. (Def. Exhibit B, p. 84; Exhibit T, pp. 36-38). Therefore, the undisputed facts prove that Guillot did not submit the mileage reimbursement, which is why she was not paid for this expense.

This Court finds that Plaintiff is not entitled to a year-end bonus for 2005 in the amount of $175.00. Walgreens's policy on this states: "If a staff pharmacist is assigned to a store for less than the full bonus period, or in certain locations has not worked a minimum of 30 hours in each week of the bonus period, the Results Department will prorate the bonus." (Def. Exhibit HH, p. 1). Guillot did not qualify under this provision because she worked below 30 hours a week from August 2005 through December 2005 and Lafayette was not a location that allowed for prorated bonuses under this policy. (Def. Exhibit B, pp. 123, 156; Exhibit HH).

Finally, this Court finds that Plaintiff is not entitled to receive a pharmacist referral

bonus. It is undisputed that Plaintiff did not follow the instructions in the policy and did not complete and submit the written form for this bonus during her employment. (Def. Exhibit GG; Exhibit B, pp. 119-120). Consequently, she is not entitled to payment.

## CONCLUSION

Based on the foregoing, there are no genuine issues of material fact present in this matter and Defendant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(C)*. Defendant's Motion for Summary Judgment (Doc. #23) is hereby GRANTED.

THUS DONE AND SIGNED on this the 15th day of April, 2008.

_____
UNITED STATES DISTRICT COURT JUDGE